UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DUCOTE JAX HOLDINGS, L.L.C., et al** * | | **CIVIL ACTION** |
| **VERSUS** * | | **NO. 04-1943** |
| **WILLIAM E. BRADLEY** * | | **SECTION "L"(2)** |

ORDER AND REASONS

Pending before the Court is Plaintiffs' Motion for Summary Judgment (Rec. Doc. 199); Defendant's Motion to Dismiss (Rec. Doc. 200) and Defendant's Motion for Summary Judgment (Rec. Doc. No. 201).  For the following reasons, the Defendant's Motion to Dismiss and Motion for Summary Judgment are hereby DENIED, and the Court DENIES the Plaintiffs' Motion for Summary Judgment, reserving their right to refile the Motion after some discovery has been conducted.

I.  **Factual and Procedural Background**

The history of this case is lengthy in detail.  The Plaintiffs first filed a complaint on July 8, 2004.  Through that complaint and several amending and supplemental pleadings, the Plaintiffs asserted claims against Bradley, a Louisiana attorney; Bank One, NA (now part of JP Morgan Chase Bank NA); three Bank One executives, John B. Ohle, III, Scott D. Deichmann and Jeffrey T. Conrad; Deutsche Bank AG; Deutsche Bank Securities, Inc. (together with Deutsche Bank AG, "Deutsche Bank"); American Express Tax and Business Services, Inc. ("Amex," now known as RSM TBS); three Illinois tax attorneys, Paul M. Daugerdas, Erwin Mayer, and Donna Guerin; and Paul M. Daugerdas Chartered ("DMG Group"), an Illinois

corporation formed by Paul M. Daugerdas to render legal services,[1] (together, "Defendants") for their alleged roles in colluding, soliciting and inducing the Plaintiffs and other high net-worth individuals to participate in a tax strategy that the Internal Revenue Service ("IRS") has found to be an unregistered tax shelter.

In their complaint, the Plaintiffs state that they filed corporate and individual tax returns upon the advice of the Defendants, assuming the strategy was lawful though the Defendants knew or should have known it was improper and illegal.  They assert the following claims against the Defendants: (1)  civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68; (2) Declaratory Judgment and Unjust Enrichment; (3) Breach of Fiduciary Duty; (4) Fraud; (5) Negligent Misrepresentation; (6) Breach of Contract; and (7) Civil Conspiracy.[2]  Additionally, on December 29, 2004, the Plaintiffs filed a Complaint for Damages and for Declaratory Judgment against Jenkens & Gilchrist, alleging legal malpractice.[3]  The Plaintiffs claim that the advice from the Defendants has proven disastrous in that they have paid a significant amount of fees to the Defendants only to receive allegedly erroneous and incompetent advice that (a) caused the Plaintiffs to be

---

[1] Additional parties were also included as Defendants, but are left out for purposes of recounting the factual and procedural summary of the case.

[2] The Plaintiffs filed their original complaint on July 8, 2004, a First Amended and Supplemental Complaint on November 4, 2004, and a Third Amended and Supplemental Complaint on August 2, 2005.  The summary of the Plaintiffs' claims is based on the Second Amended and  Supplemental Complaint which amends and supplements the previously filed complaints in their entirety.  The Third Amended and Supplemental Complaint only amends a number of specific paragraphs asserted in the preceding complaints and adds plaintiffs. The Plaintiffs also filed a RICO Statement on July 28, 2004, which was thereafter amended on January 26, 2005.

[3] *Ducote Jax Holdings, L.L.C. v. Jenkens & Gilchrist*, Civ. Action No. 04-3518.

threatened with the assessment of substantial additional taxes, plus interest and penalties, (b) prevented Plaintiffs from availing themselves of legitimate tax opportunities and deductions, and (c) caused or will cause the Plaintiffs to pay substantial amounts to rectify the alleged misconduct of the Defendants.

In early 2006, the Plaintiffs settled all claims except those against Defendant Bradley. The Court issued orders granting motions to dismiss these claims on January 10 and June 21, 2006 (Rec. Doc. Nos. 174 and 191).  Thus, the only remaining Defendant in the case is Mr. Bradley.  The Plaintiffs claim that he was a member of the conspiracy and he was paid $112,500.00 from money that the Plaintiffs paid to the enterprise for its false and fraudulent advice.  The Plaintiffs contend that Bradley did not perform any work warranting the compensation paid to him, and furthermore, Bradley's participation was never disclosed to them. They claim that they did not even learn of Bradley's involvement or the $112,500.00 fee paid to him until 2004 when they received documents from Jenkens & Gilchrist pursuant to an IRS investigation.

On June 5, 2006, in pursuit of their claim against Bradley, the Plaintiffs served their discovery requests, including a Requests for Admission.  However, Bradley did not respond with answers or objections within the relevant discovery period.  One week after the discovery deadline passed for Bradley's reply to the Plaintiffs' request for information, Bradley's attorney informed Plaintiffs' counsel that his client refused to comply with the Plaintiffs' discovery request as Bradley considered himself released from all claims as a third party beneficiary under a settlement agreement executed by the Plaintiffs, Bank One and Amex.  In response, the Plaintiffs filed a Motion to Compel, which was set for hearing before the Magistrate Judge.  On

August 2, 2006, the Magistrate Judge found that Bradley waived objections to all interrogatories due to his failure to respond; all matters set forth in the Plaintiffs' requests for admissions were deemed admitted; and Bradley must pay the Plaintiffs reasonable attorney's fees and costs incurred in connection with the Motion (Rec. Doc. No. 197).

On August 15, 2006, the Defendant filed an appeal of the Magistrate Judge's order, as well as the Motion to Dismiss and Motion for Summary Judgment.  The Plaintiffs filed a Motion to Dismiss the same day.  The Court subsequently denied the Defendant's appeal of the Magistrate Judge's order (Rec. Doc. No. 215).  At this time, the Court has reviewed the briefs and arguments of the parties regarding the three Motions and studied the applicable law, and it is now ready to rule.

## II. The Defendant's Motion to Dismiss

Bradley's Motion to Dismiss essentially states that the Plaintiffs have failed to state a claim under Rule 9(b) of the Federal Rules of Civil Procedure.  Bradley states that the Plaintiffs' original and amended Complaints, as well as the original and amended RICO Statements, make general and conclusory allegations against the Defendants as a group and the pleadings' specific statements as to Bradley are quite limited.   For example, Bradley states that he was not mentioned by name in the original Complaint, the Third Amended and Supplemental Complaint, or the original RICO Complaint.  Bradley contends that these limited statements regarding Bradley's knowing participation in racketeering acts and failure to allege any specific violations of any RICO prohibition do not comply with the pleading requirements under Rule 9(b).  He argues that the Plaintiffs' failure to satisfy Rule 9(b) requirements requires the dismissal of the Plaintiffs' federal claims under Rule 12(b)(6) and contends that dismissal of the pendent state

court claims would be an appropriate exercise of the Court's discretion.

The Plaintiffs contend that it has pled Bradley's role in the scheme in more than sufficient detail to survive a Rule 12(b)(6) Motion to Dismiss. Though the Plaintiffs concede that Bradley's role is not entirely clear, they argue that it is apparent that he conspired and participated in an ongoing scheme with other named Defendants to design, create, engineer, implement, market, promote and/or sell transactions to the Plaintiffs which he knew the IRS would find illegal or abusive, and he received payment of $112,500.00 of the Plaintiffs' money for committing these acts.

**Analysis**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allow a defendant to seek dismissal of a complaint based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When determining whether a motion to dismiss is warranted under Rule 12(b)(6), a district court should construe the complaint liberally in favor of the plaintiff, assuming all factual allegations to be true. *See Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999). Rule 12(b)(6) motions are viewed with disfavor and are rarely granted. *See id*. However, dismissal is appropriate if it is evident beyond doubt that the plaintiff is unable to prove a set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Rule 8 of the Federal Rules of Civil Procedure sets forth a general notice pleading standard. All that is required is a short and plain statement of the claim that fairly apprises the defendant of the elements of and grounds for the claim. *Id*. at 47. However, Rule 9(b) requires a heightened pleading standard for claims asserting fraud, such as RICO claims resting on

allegations of fraud.  *See Tel-Phonic Serv. Inc. v. TBS Int'l, Inc*., 975 F.2d 1134, 1139 (5th Cir. 1992).  "On its most fundamental level, [Rule 9(b)] ensures that the defendant will have sufficient information relating to the alleged fraud to defend against the allegations." *United States ex rel. Stewart v. The Louisiana Clinic*, No. 99-1767, 2002 WL 257690, at *2 (E.D. La. Feb. 22, 2002) (referring to *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)).  Specifically, Rule 9(b) states:

> In all averments of fraud, or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Civ. P. 9(b).

The Fifth Circuit holds that Rule 9(b) thus requires that a plaintiff pleading fraud "allege the particulars of time, place and contents of the fraud representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby, otherwise referred to as the who, what, when, where, and how of the alleged fraud." *United States ex. rel. Willard v. Humana Health Plan of Texas*, 336 F.3d 375, 384 (5th Cir. 2003) (citing *Williams v. WMX Techs.*, 112 F.3d 175, 179 (5th Cir. 1997) and *United States ex. rel. Thompson v. Columbia/HCA Healthcare Corp*., 125 F.3d 899, 903 (5th Cir. 1997)) (internal quotations omitted).

The second sentence of Rule 9(b), however, imparts a less strict pleading standard for conditions of the mind, such as scienter.  *Willard*, 336 F.3d at 384 (citing *Tuchman*, 14 F.3d at 1068).  For scienter, a plaintiff  must allege specific facts supporting an inference of fraud.  *Id.*  Facts illustrating a defendant's motive to perpetrate fraud may present a factual background sufficient for an inference of fraudulent intent.  *Id.*

When a plaintiff brings a RICO claim based on fraud against multiple defendants, courts require the plaintiff to plead sufficient facts to notify each defendant as to his participation in the scheme. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) (citing *Vicom, Inc. v. Harbridge Merchant Servs. Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). Thus, a plaintiff "cannot avoid a Rule 12(b)(6) motion to dismiss by lumping together the defendants." *In re Mastercard Int'l Inc.*, 132 F. Supp. 2d 468, 476 (E.D. La. 2001) (quoting *Goren,* 156 F.3d at 730) (internal quotations omitted). For example, a complaint may not name all defendants and then mechanically add "and each of them" for each act or omission, rather than specifying each act or omission that was made by each defendant. *Lesavoy v. Lane*, 304 F. Supp. 2d 520 (S.D.N.Y. 2004), *aff'd in part and vacated and remanded on other grounds*, 170 Fed. Appx. 721 (2d Cir. 2006).

In this case, the Plaintiffs filed an original complaint and three amended and supplemental complaints. Bradley is first asserted as a Defendant in the First Amended and Supplemental Complaint, and allegations are repeated against him in the Second Amended and Supplemental Complaint. The Third Amended and Supplemental Complaint does not mention Bradley by name. However, that pleading does not replace prior complaints, but only adds allegations to those already asserted. Thus, the Plaintiffs did not commit a defect by failing to mention Bradley in the Third Amended Complaint, as Bradley alleges. The Second Amended Complaint, which replaces all prior complaints, is some 86 pages in length, and 24 of those pages are devoted to the alleged RICO violations. Additionally, the Plaintiffs filed a 27-page RICO Statement and a 66-page Amended RICO Statement.

The Amended RICO Statement contains the following specific allegations regarding

Bradley:

> Defendant William E. Bradley was paid for his participated [sic] in the design, creation, engineering, implementation, marketing, promotion and/or sale of transactions which were designed to reduce or eliminate tax liability and which have been, or will be, determined by the Internal Revenue Service to be illegal and/or abusive tax shelters under the Internal Revenue Service Notice 2000-44, Internal Revenue Service Announcement 2004-46, and/or other Internal Revenue Service Notices or Announcements. Upon information and belief, this Defendant violated 18 U.S.C. § 1962(a) by investing fees and commissions received by Plaintiff back into the Enterprise, which caused injury to Plaintiff as set forth herein. This Defendant has also violated 18 U.S.C. § 1962(d) by conspiring, pursuant to 18 U.S.C. § 1962(c), with the other Defendants and co-conspirators as set forth herein, to conduct or participate in, directly or indirectly, the conduct of the affairs of the § 1962(c) Enterprise described herein through a pattern of racketeering activity.

(Am. RICO Statement 5).

The extent of detail concerning those alleged RICO violations specific to Mr. Bradley in the First and Second Amended and Supplemental Complaints includes the following: invoices from Bradley and a worksheet indicates that Jenkens & Gilchrist owed fees to Bank One, Bradley and Lukinovitch and these invoices were never disclosed to the Plaintiffs (First Am. and Supplemental Compl. 11-12); Bradley presumably submitted these invoices because he was involved in the review or mechanics underlying the illegal tax strategies (First Am. and Supplemental Compl. 19; Second Am. and Supplemental Compl. 48-49); and Defendants solicited, assembled and paid allegedly independent third parties, including but not limited to Bradley, to review and give advice on the illegal tax strategies (First Am. and Supplemental Compl. 28, 50; Second Am. and Supplemental Compl. 57, 78).

The complaints and RICO statements specify in detail the nature of the alleged scheme and the circumstances which the Plaintiffs claim constitute RICO violations. However, as regards to Mr. Bradley, the specific allegations concerning his alleged involvement in the scheme, as detailed above, are quite limited. These statements identify Mr. Bradley, but fail to

state the "what, when, where and how" of his involvement. However, the reason why these required statements are not included and why Bradley is not provided with specific information regarding his alleged participation is because the Plaintiffs have not been able to discover any information regarding the extent of Bradley's involvement. This is largely due to Bradley's refusal to cooperate in the discovery process. Bradley rejected participation in settlement negotiations and has refused thus far to submit written discovery responses or schedule a deposition. Additionally, the Plaintiffs had no direct contact with Bradley and claim they did not even discover Bradley's involvement until some time in 2004 via a review of documents pursuant to an IRS investigation. The Plaintiffs never signed any contract or other document establishing a relationship Bradley. It is the Plaintiffs' belief that Jenkens & Gilchrist hired Bradley to review and give advice on the illegal strategies.

> [T]he particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all the facts necessary to detail his claim, and that is most likely to occur when the plaintiff alleges fraud against one or more third parties. *Corelt v. Rosewood Care Ctr. Inc*., 142 F.3d 1041, 1051 (7th Cir. 1998). This is appropriate as 'it is obvious that a plaintiff may not be privy to the workings of a group of defendants who have acted in concert to defraud him.' *Reschal Assoc., Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1231 (N.D. Ill. 1990)  (quoting *Lincoln Nat'l Bank v. Lampe*, 414 F. Supp. 1270, 1279 (N. D. Ill. 1976). But, the plaintiff is expected to 'identify the particular defendants who allegedly dealt with him, and...describe the circumstances under which the particular defendants dealt directly with him.' *Id.* (quoting *Lincoln Nat'l Bank*, 414 F. Supp. at 1279).

*Interlease Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc.,* 262 F. Supp. 2d 898, 914 (N.D. Ill. 2003).

Here, the Court finds good cause to permit the Plaintiffs an opportunity to amend their complaint and allege more specific allegations against Bradley after they have received his written discovery responses and taken his deposition. Accordingly, the Defendant's Motion to

Dismiss is DENIED at this time, and the Plaintiffs are given leave to amend their complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure upon receipt of Bradley's written discovery responses and the taking of his deposition.[4] The Court now turns to the Motions for Summary Judgment.

## III. Motions for Summary Judgment

### A. Summary Judgment Standard

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). To oppose a motion for summary judgment, the non-movant cannot rest on mere allegations or denials but must set forth specific facts showing that there is a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321-22 (1986); *Ashe v. Corely*, 992 F.2d 540, 543 (5th Cir. 1993).

### B. Defendant's Motion for Summary Judgment

Bradley argues that he is entitled to a summary judgment on all of Plaintiffs' claims based on a settlement agreement and release executed by the Plaintiffs, the successors to Bank One and Amex (the "Settlement Agreement") and of which Bradley considers himself to be a

---

[4] Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

third party beneficiary. Bradley claims that he is released from all of the Plaintiffs' claims based on his third party beneficiary status.

The Plaintiffs deny that they released Bradley from their claims. They contend that Bradley refused to participate in settlement negotiations which occurred during 2005 and early 2006. As a result, the Plaintiffs did not settle with Bradley or release him from claims when they settled with all other Defendants. Specifically, the Plaintiffs state that he is not an agent or attorney for Bank One or the American Express Defendants. Rather, evidence indicates that he was retained by the law firm of Jenkens & Gilchrist, an entity that is not associated with Bank One or American Express. Jenkens & Gilchrist signed a separate settlement agreement with the Plaintiffs after the Bank One Settlement Agreement was executed, thus acknowledging that they were not parties released by the Bank One Settlement Agreement. Plaintiffs also point to their motions to dismiss all other Defendants in the case as further evidence of their intent to retain claims against Bradley. The Plaintiffs argue that, at the very least, a genuine issue of fact exists as to whether Bradley is a released party, making summary judgment inappropriate.

**Analysis**

The Settlement Agreement, executed by the Plaintiffs, the successors of Bank One, and American Express, provides that Bank One and Amex are irrevocably released from all claims related to the transactions. Additionally, the Settlement Agreement releases all of Bank One's and Amex's past and present, agents, employees, affiliates, representatives, and attorneys, among others, from liability. At the end of paragraph regarding release, the Settlement Agreement specifically provides that certain named individuals are included within the group of those parties intended to be released. These individuals include the three named Bank One executives,

all of whom were Defendants in the case.  Bradley's name is not mentioned among the list of specifically named individuals.

The Court looks to Louisiana law to determine whether Bradley is an intended beneficiary since the Settlement Agreement is governed by and construed under the laws of that State.  Article 1978 of the Louisiana Civil Code provides, in part, that a "contracting party may stipulate a benefit for a third person called a third-party beneficiary."  La. Civ. Code art. 1978. The law does not require that a third party beneficiary be specifically named in the contract, but the promise, known as a *stipulation pour autrui* under Louisiana jurisprudence, must also never be presumed to exist.[5]  *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1147 (5th Cir. 1993).  "Rather, the intent of the contracting parties to stipulate a benefit in favor of a third party must be made manifestly clear."  *Id.* (referring to *Homer Nat'l Bank v. Tri-District Dev. Corp.*, 87-924, p. 5 (La. App. 3 Cir. 11/9/88); 534 So. 2d 154, 156, *writ denied*, 536 So. 2d 1236 (La. 1989)).

The Fifth Circuit elucidated when such a promise will be found to exist in *New Orleans Public Service, Inc. v. United Gas Pipe Line, Co.*, 732 F.2d 452 (5th Cir. 1984) (en banc):

> Louisiana law is settled that for there to be a *stipulation pour autrui* there must be not only a third party advantage, but the benefit derived from the contract by the third party may not merely be incidental to the contract.  Rather, the third-party must form the condition or consideration of the contract in order for it to be a *stipulation pour autrui*.  Moreover, a *stipulation pour autrui* will be found only when the contract *clearly* contemplates the benefit

---

[5]For a discussion of the historical development of the doctrine, see J. Denson Smith, *Third Party Beneficiaries in Louisiana: The Stipulation Pour Autri*, 11 Tul. L. Rev. 16 (1936). Professor Smith's article has been heavily relied upon by the Louisiana Supreme Court in fashioning the analytical test for determining when *stipulation pour autrui* exists.  *See Andrepont v. Acadia Drilling Co.*, 255 La. 347, 231 So. 2d 347 (1969) and *Joseph v. Hosp. Serv. District. No. 2 of the Parish of St. Mary, State of Louisiana*, 05-2364 (La. 10/15/2006); 2006 La. LEXIS 2882, at *11-15.

to the third person as its condition or consideration.

*Id.* at 467 (internal citations omitted) (quoted in *Chevron*, 987 F. 2d at 1147).

The Louisiana Supreme Court recently set out a three-part test establishing that *stipulation pour autrui* must be applied on a case-by-case basis: "(i) the stipulation for a third party must be manifestly clear; (ii) there is certainty as to the benefit provided to the third party; and (iii) the benefit is not a mere incident of the contract between the promisor and the promisee." *Joseph*, 2006 La. LEXIS 2882, at *14.

According to Article 1831, "[a] party who demands the performance of an obligation must prove the existence of a contract." La. Civ. Code art. 1831. Thus, Bradley, in this case claiming the benefit, bears the burden of proof that the three-part test necessary to find *stipulation pour autrui* is met. *See Joseph*, 2006 La. LEXIS 2882, at *14.

Here, Bradley clearly fails to satisfy the first prong in the three-part test. It is not "manifestly clear" from the language of the Settlement Agreement that Bradley was intended to be a third party beneficiary. While it is true that affiliates or attorneys of Bank One or Amex are clearly intended beneficiaries, Bradley has not provided any evidence that he is an affiliate or attorney of Bank One, other than his own affidavit. While Bradley's exact role in the transactions at issue is somewhat unclear, Bradley's affidavit submitted with this Motion states that he sent invoices to Jenkens & Gilchrist for services he performed. Plaintiffs also state that they have in their possession documentation from Jenkens & Gilchrist indicating that Bradley directly billed this law firm for his services. This information regarding payment supports the finding that Bradley was retained by the law firm of Jenkens & Gilchrist, and he is not an affiliate, employee, attorney, etc. of Bank One. If he did have such a relationship with Bank

One, it is reasonable to assume that Bradley would have sent invoices to Bank One instead.

The Court finds the opinion in *Anselmi v. Walk-Haydel and Associates,* 469 So. 2d 1122,1124 (La. App. 4 Cir. 5/8/85) helpful on this point. In that case, the plaintiff was injured while working on a barge, owned and operated by his employer, after a third party's vessel generated a large wave which washed over the employer's vessel. A subsequent settlement agreement between the plaintiff and his employer provided that the agreement released "any third party" and "any parties connected either directly or indirectly with the accident." *Id.* at 1124. Even though the plaintiff contended the settlement agreement was not intended to cover the third party who had generated the wave, the court found that this language created a *stipulation pour autrui* for the third party. *Id.* The court made this determination even though the third party's name was not mentioned in the contract and even though the third party was not identifiable at the time of the signing of the settlement agreement. *Id.*

In the present case, there is no such general language regarding "any third party" or "all third parties" related to the case contained in the Settlement Agreement at issue. Thus, the Settlement Agreement does not provide a *stipulation pour autrui* for Bradley releasing him from all of the Plaintiffs' claims. The Court also notes the injustice in permitting a party who has explicitly refused to participate in settlement negotiations to later claim a third-party benefit from a settlement agreement successfully negotiated and executed by the other parties through good faith efforts. Bradley's Motion for Summary Judgment is consequently DENIED.

### C. Plaintiffs' Motion for Summary Judgment

Lastly, the Plaintiffs seek summary judgment in their favor for the following claims contained in their Second Amended and Supplemental Complaint: (i) the RICO civil violations;

(ii) declaratory judgment and unjust enrichment; (iii) breach of fiduciary duty; (iv) fraud and (v) civil conspiracy. As a basis for summary judgment, Plaintiffs point to specific admissions that Bradley was deemed to have admitted due to his failure to respond to the Plaintiffs' interrogatories. Bradley opposes the Motion for Summary Judgment arguing that the admissions do not reflect the facts of the case and Bradley's involvement.

**Analysis**

Because the request for admission concern essential issues in this case, it is possible that Bradley's failure to respond to the Plaintiffs' requests could lead to a grant of summary judgment against him. *Hill v. Brezeale*, No. 05-60069, 2006 WL 2528346, at *4-5 (5th Cir. Sept. 1, 2006) (grant of summary judgment through deemed admissions appropriate where non-responding party was found to have "blatant disregard for deadlines and Federal Rules" and to be "aware of importance of deadlines, but deliberately and selectively chose to disregard certain deadlines"); *Dukes v. South Carolina Ins. Co.*, 770 F.2d 545, 548-49 (5th Cir. 1985). When default admissions are not permitted to be withdrawn and the facts have been deemed admitted, a court may choose not to reexamine them. However, the Court believes it is appropriate in this case to deny the Plaintiff's Motion for Summary Judgment at this time, reserving their right to refile it after *some* discovery has been conducted. At this time, the Plaintiffs have not received any written discovery responses from Mr. Bradley. Nor has Bradley replied to requests for deposition dates. Pursuant to the Court's Order denying appeal of the Magistrate Judge's decision, Bradley's responses to written discovery are due within 10 days of the Court's Order, November 10, 2006. Furthermore, Bradley's deposition must take place within thirty days after the Plaintiffs receive his responses (Rec. Doc. No. 214).

## IV. Conclusion

Accordingly, Defendant's Motion to Dismiss for Failure to State a Claim and Motion for Summary Judgment are hereby DENIED. In addition, the Court DENIES the Plaintiffs' Motion for Summary Judgment at this time, reserving their right to refile it after the Plaintiffs receive Bradley's responses to written discovery requests and Bradley's deposition is taken.

New Orleans, Louisiana, this __14th__ day of November, 2006.

*[signature: Eldon E. Fallon]*
UNITED STATES DISTRICT JUDGE