## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DUCOTE JAX HOLDINGS, L.L.C., et al** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 04-1943** |
| **WILLIAM E. BRADLEY** | * | **SECTION "L"(2)** |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is a civil action arising under 18 U.S.C. §§ 1961-1968, § 901(a) of Title IX of the Organized Crime Control Act of 1970, as amended, otherwise known as the Racketeer Influenced and Corrupt Organization Act ("RICO"), and in particular § 1964.  Plaintiffs first filed a complaint on July 8, 2004.  Through that complaint and several amending and supplemental pleadings,[1] the Plaintiffs asserted claims against William E. Bradley, a Louisiana attorney; Bank One, NA (now part of JP Morgan Chase Bank NA); three Bank One executives, John B. Ohle, III, Scott D. Deichmann and Jeffrey T. Conrad; Deutsche Bank AG; Deutsche Bank Securities, Inc. (together with Deutsche Bank AG, "Deutsche Bank"); American Express Tax and Business Services, Inc. ("Amex," now known as RSM TBS); three Illinois tax attorneys, Paul M. Daugerdas, Erwin Mayer, and Donna Guerin; and Paul M. Daugerdas Chartered ("DMG

---

[1]  The Plaintiffs filed their original complaint on July 8, 2004, a First Amended and Supplemental Complaint on November 4, 2004, and a Third Amended and Supplemental Complaint on August 2, 2005.  The summary of the Plaintiffs' claims is based on the Second Amended and  Supplemental Complaint which amends and supplements the previously filed complaints in their entirety.  The Third Amended and Supplemental Complaint only amends a number of specific paragraphs asserted in the preceding complaints and adds plaintiffs. The Plaintiffs also filed a RICO Statement on July 28, 2004, which was thereafter amended on January 26, 2005.

Group"), an Illinois corporation formed by Paul M. Daugerdas to render legal services,[2] (together, "Defendants") for their alleged roles in colluding, soliciting and inducing the Plaintiffs and other high net-worth individuals to participate in a tax strategy that the Internal Revenue Service ("IRS") has found to be an unregistered tax shelter.  In their complaint, the Plaintiffs state that they filed corporate and individual tax returns upon the advice of the Defendants, assuming the strategy was lawful though the Defendants knew or should have known it was improper and illegal.

The Plaintiffs' complaint states that the tax strategy at issue was developed by Defendant Daugerdas, then a partner in the law firm of Jenkens & Gilchrist, and Deutsche Bank, in the mid to late 1990s.  The tax strategy involved the purchase and sale of foreign exchange digital options, known as "FX Contracts."   According to the Plaintiffs, the Defendants, capitalizing on Bank One's close relationship with the Plaintiffs, approached them in or around October 2001 and induced them to enter into the transactions by representing that the tax strategies had been vetted by the law firm Jenkens & Gilchrist, and that this law firm would provide legal opinions assuring the Plaintiffs that the tax strategies provided protections against penalties that the IRS could assess in the unlikely event that the IRS challenged the legitimacy of the tax strategies. However, the Plaintiffs contend these opinion letters affirming the legality of the tax strategies were "prefabricated" or "canned," prepared long before clients were solicited.  The Plaintiffs claim that they were never made aware that the tax strategies were actually created, designed and implemented for the most part by Bank One and the DMG Group.  The DMG Group, comprised

---

[2]  Additional parties were also included as Defendants, but are left out for purposes of recounting the factual and procedural summary of the case.

of Jenkins & Gilchrist attorneys, was not providing an "independent" opinion letter, but rather an opinion letter as to the validity of its own tax shelter.

The Plaintiffs claim that the Defendants knew or should have known that such tax strategies were clearly illegal, based on several notices issued by the IRS before the strategies were promoted to them.  The Plaintiffs state that they relied on the Defendants for their tax and legal expertise and consequently participated in the transactions, paying the Defendants fees approximating $1,033,500.00.  Amex, asserting that the strategy was a legal tax shelter, prepared the Plaintiffs' 2001 corporate and personal tax returns utilizing the losses generated by the strategies.  However, subsequent to their participation, the Plaintiffs became aware that the tax strategies were indeed illegal.  In May 2004, the IRS offered to settle with those tax-payers like Plaintiffs by payment to the IRS of all taxes avoided by use of these transactions; all interest due; a 10% penalty; and a loss of 50% of fees and other "out of pocket" costs deducted.  Otherwise, the IRS indicated the taxpayers would be assessed all tax and interest, plus a 40% penalty and loss of all deductions.

The Plaintiffs contend that the purpose and effect of the Defendants' enterprise was to generate millions of dollars of  fees by co-promoting and serving as a counter-party for the FX Contracts as part of an alleged tax savings strategy.  They contend that the amount of fees they were billed by the Defendants was not based on time or effort expended working on the deal, but solely on the size of the transaction.  The Plaintiffs claim that the Defendants devised the transaction and agreed to provide a veneer of legitimacy to each other's opinion as to the lawfulness and tax consequences of the strategies at issue by agreeing to representations that would be made and issuing the alleged "independent" opinions before potential clients were

solicited.

In early 2006, the Plaintiffs settled all claims with the Defendants except those against William E. Bradley.  The Plaintiffs claim that he was a member of the conspiracy and he was paid $255,000.00 from money that the Plaintiffs paid to the Defendants' enterprise for its false and fraudulent advice.  Furthermore, the Plaintiffs claim that evidence reveals that Bradley invested the money back into the enterprise, including a payment of $46,000.00 to former Defendant and co-conspirator John  Ohle and a payment of $184,000.00 to an unknown third party and co-conspirator JDC Group, Inc.  Bradley kept the remaining $25,000.00, and the Plaintiffs contend that Bradley did not perform any work warranting the compensation paid to him, and furthermore, Bradley's participation was never disclosed to them.  They claim that they did not even learn of Bradley's involvement or the $255,000.00 paid to him until 2004 when they received documents from Jenkens & Gilchrist pursuant to an IRS investigation.

The Plaintiffs assert the following claims against Bradley: (1)  civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68; (2) breach of fiduciary duty; (3) fraud; (4) negligent misrepresentation; (5) civil conspiracy and (6) declaratory judgment and unjust enrichment.

In response, Bradley denies any involvement in a conspiracy, but states that he permitted John Ohle, a personal acquaintance and attorney whom he trusted, to wire $255,000.000 into his trust account from the law firm of Jenkens & Gilchrist.  Bradley states that he proceeded on the instructions of John Ohle regarding billing and the wiring of money, and he disbursed all but $25,000.00, which he kept for himself.  He claims that he understood very little of the basis of the financial transactions and did not know the original source of this money.

This matter came on for trial without a jury on May 21, 2007.  The Court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the *Federal Rules of Civil Procedure*, after careful consideration of witness testimony, exhibits in the record and the Plaintiffs' requests for admission that were deemed admitted.[3]  To the extent that a Finding of Fact constitutes a Conclusion of Law, the Court adopts it as such.  And to the extent that a Conclusion of Law constitutes a Finding of Fact, the Court also adopts that assumption.

## II.    FINDINGS OF FACT

(1)

Defendant William E. Bradley is a natural person of the full age of majority and a resident and domiciliary of the city of Hammond, Parish of Tangipahoa, State of Louisiana.  Pls.' Request for Admission No. 1.

(2)

Bradley has conducted substantial business in the Eastern District of Louisiana and his conduct, upon which this action is founded, occurred in and was intended to injure the Plaintiffs in the Eastern District of Louisiana.  Pls.' Request for Admission No. 2 & 3.  Bradley's activities at issue in this case were conducted through a pattern of acts and transactions which occurred and/or had their effect within the State of Louisiana, in this judicial district, the Eastern District of Louisiana.  Pls.' Request for Admission No. 4.

(3)

---

[3]On August 2, 2006, the Magistrate Judge found that Bradley waived objections to all interrogatories due to his failure to respond and that all matters set forth in the Plaintiffs' requests for admissions were deemed admitted (Rec. Doc. No. 197).  The Court subsequently denied the Defendant's appeal of the Magistrate Judge's order (Rec. Doc. No. 215).

Bradley's acts and conduct described in the Plaintiff's Third Amended and Supplemental
Complaint directly or indirectly used the means of interstate commerce, including the mails and
telephones, (Pls.' Request for Admission No. 5), as Bradley communicated by U.S. mail and by
wire with Jenkens & Gilchrist and/or Bank One Corporation, located in Chicago, Illinois and/or
Dallas, Texas, in connection with the underlying strategies.  Pls.' Request for Admission No. 24.

(4)

Bradley entered into various arrangements with other Defendants named in the lawsuit to
market, promote and opine regarding certain tax strategies to high net-worth individuals and
business entities, such as and including the Plaintiffs herein, in order to generate exorbitant fees
by misrepresentations and advice that he knew or should have known were improper and illegal.
Pls.' Request for Admission No. 6.

(5)

Bradley colluded with other of the Defendants named in the instant lawsuit in order to
assist in inducing Plaintiffs to engage in tax strategies.  Pls.' Request for Admission No. 7.

(6)

Bradley does not know the nature of the tax strategies at issue, (Pls.' Request for
Admission No. 22), but knew enough about the strategies to be aware, as early as December of
2001, that they were similar to prior strategies found abusive and invalid by the IRS and likely to
be intensely scrutinized, disallowed and/or prohibited by the IRS.  Pls.' Request for Admission
No. 8 & 26.  Bradley was aware that the tax strategies that were sold to the Plaintiffs in this
matter were part of a scheme designed by Defendants to make money.  Pls.' Request for
Admission No. 17.  Bradley was aware that there were numerous other individuals and/or

business entities that were pursued, solicited, and induced to participate in the underlying tax strategies.  Pls.' Request for Admission No. 19.

(7)

Bradley was recruited by former defendant John B. Ohle, III, who worked for Bank One or Innovative Strategies Group, Inc.  *See* Pls.' Request for Admission No. 18.  Ohle contacted Bradley and instructed him to fax an opinion to and bill Jenkens & Gilchrist.  *See id.*

(8)

Bradley does not recall who provided him with the opinion letter to fax, but states that it was either Ohle or a business associate of Ohle.

(9)

Bradley faxed the opinion letter to Jenkens & Gilchrist and also sent invoices to Jenkens & Gilchrist via the mail system.

(10)

Bradley billed $112,500.00 to Jenkens & Gilchrist for matters relating to Ducote Jax Holdings, LLC, Wayne C. Ducote, David L. Ducote and/or Suzette A. Ducote.  Pls.' Request for Admission No. 12.  The amount of fees Bradley billed to Jenkens & Gilchrist was dictated to him, (Pls.' Request for Admission No. 9), and did not reflect his usual billing rate.  Pls.' Request for Admission No. 11.  The amount of fees Bradley billed to Jenkens & Gilchrist did not reflect the amount of time or effort he spent working on the matter associated with Ducote Jax Holdings, LLC, Wayne C. Ducote, David L. Ducote and/or Suzette A. Ducote.  Pls.' Request for Admission No. 10 &14.  The fee amount that Bradley billed was tied to the amount of capital and/or ordinary losses these clients would claim on its/their tax returns.  Pls.' Request for

-7-

Admission No. 15.

(11)

Jenkens & Gilchrist wired $255,000.00 into Bradley's IOLTA bank account.

(12)

Of the $255,000.00 he received from Jenkens & Gilchrist, Bradley wrote a check in the amount of $184,000.00 to unknown conspirator "JDC Group, Inc," and he wired $46,000.00 to John Ohle.  Bradley states that he believes he wired these amounts upon the instructions of John Ohle or one of Ohle's business associates.

(13)

Bradley kept the remaining $25,000.00.  He wrote three separate checks from his IOLTA account to himself in the amounts of $5,000, $15,000, and an additional $5,000.

(14)

Bradley never spoke to any representative of Ducote Jax Holdings, LLC, Wayne C. Ducote, David L. Ducote and/or Suzette A. Ducote about anything, including, but not limited to, this matter and/or his role in this matter.  Pls.' Request for Admission No. 20.

(15)

Bradley has no file containing any information regarding Ducote Jax Holdings, LLC, Wayne C. Ducote, David L. Ducote and/or Suzette A. Ducote.  Pls.' Request for Admission No. 13.

(16)

Bradley owed Plaintiffs the duties of care, loyalty and honesty, and a duty to comply with the applicable standards of care, and he did not honor those duties.  Pls.' Request for Admission

No. 27.  Bradley was substantially compromised and could not and did not fulfill his fiduciary

and/or other good faith obligations to the Plaintiffs.  Pls.' Request for Admission No. 23.

## III.   CONCLUSIONS OF LAW

### A.   Subject Matter Jurisdiction and Venue

(1)

Jurisdiction of this Court is based upon the existence of a federal question in that the

Plaintiffs bring certain claims in this action under provisions of 18 U.S.C. § 1961, *et seq*.  28

U.S.C. § 1331.

(2)

Jurisdiction for the related state law claims is present under the doctrine of pendant

jurisdiction.  *Transource Int'l, Inc. v. Trinity Indus., Inc*., 725 F.2d 274, 285 (5th Cir. 1984).

(3)

Venue is proper in this Court as Bradley resides in this District and his conduct, upon

which this action is founded, occurred in and was intended to injure the Plaintiffs in this District.

28 U.S.C. § 1391(b).

### B.   The RICO Violations

(1)

"RICO creates a civil cause of action for any person injured in his business or property

by reason of a violation of section 1962."  *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 497

(5th Cir. 2003) (quoting 18 U.S.C. § 1964(c)) (internal quotations omitted).   "To state a RICO

claim under § 1962, there must be: (1) a person who engages in (2) a pattern of racketeering

activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise."

*Brown*, 353 F.3d at 407 (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439

(5th Cir. 2000)).  Assuming these three elements are met, the court may then continue to the

substantive requirements of each subsection of § 1962.  *St. Paul Mercury*, 224 F.3d at 439.

(2)

" A RICO person is the defendant, while a RICO enterprise can be either a legal entity or

an association-in-fact."  *Id.* at 440 (citing *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995)). "If

the alleged enterprise is an association-in-fact, the plaintiff must show evidence of an ongoing

organization, formal or informal, that functions as a continuing unit over time though a

hierarchical or consensual decision-making structure."  *St. Paul Mercury*, 224 F.3d at 440-41

(citing *Elliot v. Foufas*, 867 F.2d 977, 881 (5th Cir. 1989)).  "A pattern of racketeering activity

requires two or more predicate acts and a demonstration that the racketeering predicates are

related and amount to or pose a threat of continued criminal activity."  *St. Paul Mercury*, 224

F.3d at 441 (citing *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122

(5th Cir. 1996)).  Predicate acts asserted as a basis for a pattern of racketeering activity may

include RICO mail and wire fraud.  18 U.S.C. § 1961(1)(B).  RICO mail and wire fraud require

evidence of intent to defraud, i.e. evidence of a scheme to defraud by false or fraudulent

representations.  *St. Paul Mercury*, 224 F.3d at 441 (citing *Crowe*, 115 F.3d at 297).[4]

(3)

In this case, Bradley qualifies as a RICO person.  The enterprise is the association-in-fact

---

[4]   The elements of mail fraud as a predicate act for purposes of civil RICO claims are a
scheme to defraud by means of false or fraudulent representation, interstate or intrastate use of
mails to execute scheme, use of mails by defendant in connection with scheme, and actual injury
to plaintiff.  *In re Burynski*, 989 F.2d 733, 742 (5th Cir. 1993) (citing *Landry v. Air Line Pilots
Ass'n Int'l*, 901 F.2d 404, 428 (5th Cir.) *cert. denied*, 498 U.S. 895 (1990)).

comprised of Bradley and the other named Defendants who colluded and entered into various arrangements to market, promote and opine regarding the tax strategies, such as the one at issue in this case, in order to generate exorbitant fees by misrepresentation and advice Bradley and others knew or should have known were illegal.  Pls.' Request for Admission No. 6. & 7. Bradley engaged in a pattern of wrongful conduct through numerous predicate acts of mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343.[5]  Bradley used the mails and telephones,

---

[5]  In its Order & Reasons dated November 14, 2006 (Rec. Doc. 217), the Court addressed the particularity of the Plaintiffs' pleadings as regards Mr. Bradley.  The Court stated that when a plaintiff brings a RICO claim based on fraud against multiple defendants, the plaintiff must plead sufficient facts to notify each defendant as to his participation in the scheme. After reviewing the Plaintiffs' complaint and RICO statement, the Court found that the Plaintiffs' statements identified Mr. Bradley, including mention of his invoices to Jenkins & Gilchrist, but these statements failed to state the "what, when, where and how" of his particular involvement.  However, the Court stated that the reason why these required statements were not included and why Bradley was not provided with specific information regarding his alleged participation was because the Plaintiffs were not able to discover any information regarding the extent of Bradley's involvement.  This was largely due to Bradley's refusal to cooperate in the discovery process.  Additionally, the Plaintiffs had no direct contact or any written contract with Bradley and claim they did not even discover Bradley's involvement until some time in 2004 via a review of documents pursuant to an IRS investigation.  The Court quoted *Interlease Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc.,* 262 F.Supp.2d 898, 914 (N.D. Ill. 2003):

> [T]he particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all the facts necessary to detail his claim, and that is most likely to occur when the plaintiff alleges fraud against one or more third parties...This is appropriate as it is obvious that a plaintiff may not be privy to the workings of a group of defendants who have acted in concert to defraud him...But, the plaintiff is expected to identify the particular defendants who allegedly dealt with him, and...describe the circumstances under which the particular defendants dealt directly with him.

*Id*. (internal citations and quotations omitted).  Accordingly, the Court found good cause to permit the Plaintiffs an opportunity to amend their complaint and allege more specific allegations against Bradley after they received his written discovery responses and took his deposition.

However, Bradley continued to remain uncooperative throughout the discovery process leading up to trial.  His deposition, and later trial testimony, consisted mostly of statements in which he professed a lack of recollection or knowledge.  Bradley further maintained that he had

Pls' Request for Admission No. 5,  to fax the fraudulent opinion regarding the tax strategies and

compose and send various fraudulent invoices for services rendered in connection with the

Plaintiffs' matter.  Bradley received a wire transfer from Jenkens & Gilchrist for fraudulent fees

he billed, and he wired some of this fraudulently-obtained money to John Ohle and the JDC

Group, Inc.  Pls.' Request for Admission No. 11, 12 & 14 and Trial Test. of William Bradley.

These predicate acts had a common purpose of deriving exorbitant fees and deceiving Plaintiffs

as to the legality of the tax strategies.  The predicate acts also posed a threat of continued

criminal activity.  Other individuals were also approached and solicited by various named

Defendants regarding participation in these same tax strategies at issue here, (Pls.' Request for

Admission No. 19 & Trial Test. of David Lukinovich), and Bradley had prior business dealings

with John Ohle which involved money being wired into Bradley's bank account.  Pls.' Request

for Admission No. 6 & Trial Test. of William Bradley.

(4)

To prove a violation of §1962(a), the plaintiff must establish (1) the existence of an

enterprise, (2) the defendant's derivation of income from a  pattern of racketeering activity, and

(3) the use of any part of that income in operating the enterprise.  *St. Paul Mercury*, 224 F.3d at

441.  The definition of " use" has been defined broadly by courts to mean that a plaintiff "need

prove only that illegally derived funds flowed into the enterprise."  *See id.* at 442.  Additionally,

a nexus must exist between the claimed violation and the plaintiff's injury.  *Id.* (citing *Crowe*, 43

F.3d at 205).  "In other words, for a viable § 1962(a) claim, any injury must flow from the use or

---

no documentation whatsoever regarding the Plaintiffs' matter.  Given the Plaintiffs' complete
lack of access to discover more about Bradley's involvement, the Court finds that the Plaintiffs
sufficiently alleged Bradley's role in the scheme.

-12-

investment of racketeering income." *Id.* (citing *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 584 (5th Cir. 1992)).  An injury cannot just flow from the predicate acts themselves.  *St. Paul Mercury*, 224 F.3d at 443.

> [I]njuries due to predicate acts cannot form the basis of an investment injury for purposes of § 1962(a).  We must ask whether the injuries were a result of the predicate acts or a result of the investment of racketeering proceeds into a RICO enterprise.  Otherwise it would be difficult to understand why Congress enacted §1962(a).  If allegations sufficient to base a § 1962(c) action meet all the requirements of a § 1962(a) allegation then there is no real rationale for Congress having passed both.

*Id.*

(5)

William Bradley violated §1962(a).  Bradley was recruited by Ohle to bill Jenkens & Gilchrist, (Pls.' Request for Admission 18), he wrote an invoice to Jenkens & Gilchrist in the amount of $112,500.00 for less than ten hours of work on matters related to the Plaintiffs, and Bradley derived income from the pattern of racketeering activity when he subsequently received $255,000.00 by wire from Jenkens & Gilchrist.  Bradley used part of this income to invest back into the enterprise when, at the behest of one of the other Defendants, he wired $46,000 from his IOLTA account to Ohle and he wrote a check in the amount of $184,000.000 to JDC Group, Inc.

The Plaintiffs were injured by Bradley's use or investment of racketeering proceeds into the RICO enterprise as Bradley's wiring of money to Ohle and JDC Group, Inc. permitted the Defendants to fraudulently obtain funds from the Plaintiffs for work they did not do.  *See Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995).  The Plaintiffs' injury that flowed from Bradley's investment amounts to $235,000.00, the amount that Bradley wired to Ohle and JDC Group, Inc.

-13-

(6)

Section 1962(b) states that "a person may not acquire or maintain an interest in an enterprise through a pattern of racketeering." *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) (quoting *Crowe*, 43 F.3d at 203). The Plaintiffs must show that their injuries were "proximately caused by a RICO person gaining an interest in, or control of, the enterprise through a pattern of racketeering activity." *Id*. Again, as in subsection (a), a nexus must exist between the claimed RICO violation and the injury suffered. *Id*.

(7)

Bradley did not violate Section 1962(b). A pattern of racketeering and an enterprise existed, *see supra* ¶¶ 3 & 9, but the Court does not find that the Plaintiffs have sufficiently established a causal relationship between the injuries they sustained and Bradley's acquisition or maintenance of an interest in the enterprise.

(8)

"§ 1962(c) prohibits any person employed by or associated with any enterprise from participating in or conducting the affairs of that enterprise through a pattern of racketeering activity." *St. Paul Mercury*, 224 F.3d at 445. "[T]he compensable [RICO] injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern" and "[a]ny recoverable damages occurring by reason of a violation of 1962(c) will flow from the commission of the predicate acts." *Sedima v. Imrex*, 473 U.S 479 (1985) (quoting *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 398 (7th Cir. 1984), *aff'd*, 473 U.S. 606 (1985)).

(9)

-14-

Bradley violated § 1962(c).  He was a person employed or associated with the enterprise as he was solicited by Ohle, Bank One and/or Jenkens & Gilchrist, and he faxed the opinion and billed Jenkens & Gilchrist for $112,500.00 for work on the Plaintiffs' account that he knew was fraudulent since he estimated that it took less than ten hours to complete.  He participated and conducted the affairs of the enterprise through the pattern of racketeering activity when he committed predicate acts of mail and wire fraud, as listed in III(B), ¶ 3 *supra*.  His over-billing of the hours he expended, the wiring of the money obtained through fraudulent fees, and his faxing of the fraudulent opinion caused the Plaintiffs to be charged exorbitant fees and furthered the air of legitimacy of the tax strategies.  In short, Bradley's predicate acts permitted the enterprise to deceive the Plaintiffs into participating in the tax strategy.  The Plaintiffs' injury from these predicate acts includes tax assessments, fees and penalties they were required to pay to the IRS and related legal fees and costs.

(10)

§ 1962(d) prohibits a person from conspiring to violate subsections (a), (b) or (c).  18 U.S.C. §1962(d).

> A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.  A defendant must also have been aware of the essential nature and scope of the enterprise and intended to participate in it.  Thus, there must be an agreement that is a substantive violation of RICO or the defendants must agree to commit or participate in a violation of two predicate offenses.

*Howard v. America Online*, 208 F.3d 741, 751 (9th Cir. 2001) (internal quotations omitted).

All conspirators are liable for the acts of their co-conspirators.  *See, e.g., Oki Semiconductor Co. v. Wells Fargo Bank Nat. Ass'n*, 298 F.3d 768, 774-75 (9th Cir. 2002).

(11)

Bradley violated § 1962(d).  Bradley was part of a conspiracy with other named Defendants to generate exorbitant fees by making misrepresentations and inducing high net-worth individuals and business entities, such as the Plaintiffs, to participate in tax strategies that Bradley and the other Defendants knew or should have known were improper and illegal. Pls.' Request for Admission No. 6-8 & 17.   The Defendants' conspiracy by which they deceived the Plaintiffs into thinking that the tax strategies were legal caused the Plaintiffs to invest in the transactions and suffer losses of tax assessments, penalties and interest and related attorneys' fees and costs.

### C.        The Breach of Fiduciary Duty Claim

(1)

Under Louisiana law, to sustain a cause of action for breach of fiduciary duty, the plaintiff must prove (i) the existence of a fiduciary duty on the part of the defendant; (ii) an action taken by the defendant in violation of that duty; and (iii) damages to the plaintiff as a result of that duty.  *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1330 & n.20 (5th Cir. 1994).  "A claim for breach of fiduciary duty requires proof of fraud, breach of trust or an action outside the limits of the fiduciary's authority."  *Id.* (citing *Gerdes v. Estate of Cush*, 953 F.2d 201, 205 (5th Cir. 1992)).

(2)

"Louisiana courts have confined fiduciary duties to special relationships of trust and confidence...."  *Omnitech*, 11 F.3d at 1331.  For example, one acts in a fiduciary capacity when he or she transacts business or handles money which is not his or her own or for his or her

benefit, and fiduciary duty has also been recognized in certain relationships such as attorney-client, insured-insurer, majority shareholder-minority shareholder, and outside salesman-employer.  *Id*.

> One is said to act in a 'fiduciary capacity' or to receive money or contract a debt in a 'fiduciary capacity,' when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to which he stands in a relations implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part.  The term is not restricted to technical or express trusts, but includes such offices or relations as those of an attorney at law, a guardian, executor, or broker, a director of a corporation, and a public officer.

*State of Louisiana v. Hagerty*, 205 So.2d 369, 374-75 (La. 1967) (internal citations omitted).

(3)

Bradley is liable to the Plaintiffs for breach of fiduciary duty.  He owed the Plaintiffs the duties of care, loyalty and honesty and a duty to comply with the applicable standards of care and honor that duty.  Pls.' Request for Admission No. 24 & 27.  Bradley violated the duty when he never spoke to any representative of Ducote Jax Holdings, LLC, Wayne C. Ducote, David L. Ducote and/or Suzette A. Ducote about anything related to their participation in the tax strategy or Bradley's role in the matter and when he participated in a conspiracy to market, promote and opine regarding certain tax strategies to the Plaintiff in order to generate exorbitant fees by misrepresentations and advice he knew or should have known were improper and illegal.  Pls.' Request for Admission No. 6 & 20.  Bradley's breach of fiduciary duty caused the Plaintiffs to sustain injuries in the form of tax assessments, penalties and interest and related attorneys' fees and costs.

**D.      The Fraud Claim**

(1)

-17-

"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."  La. Civ. Code art. 1953.  For a plaintiff to successfully prove a fraud claim, he or she must establish (i) an intent to defraud, and (ii) actual or potential loss or damages.  *St. Paul Mercury*, 224 F.3d at 438 (citing *Williamson v. Haynes Best Western*, 95-1725 (La.App. 4 Cir. 1/29/97) 688 So.2d 1201, 1239).

(2)

"Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence."  La. Civ. Code. art. 1957.  Thus, "highly suspicious facts and circumstances surrounding a transaction may be considered in determining whether a fraud has been committed."  *Williamson*, 688 So.2d at 1239 (internal citation omitted).

(3)

Intent to defraud can be established by Bradley's collusion with other Defendants to induce the Plaintiff to engage in tax strategies he knew or should have known were improper and illegal through misrepresentations and suppressions of the truth.  Pls.' Request for Admission No. 6-8, 17& 26.  Intent to defraud can also be found from Bradley's billing of $112,500.00 fees that did not reflect his usual billing rate or the amount of work he did; the wiring of $255,000.00 into his IOLTA account; his subsequent transfers of money to Ohle and JDC Group, Inc; and the fact that he has no file regarding Ducote Jax, LLC, Wayne C. Ducote, David L. Ducote, and/or Suzette A. Ducote.  Pls.' Request for Admission 9-14.

The Plaintiffs were damaged by these misrepresentations and untruths regarding the legality of the tax strategies after they participated in the transactions and were thereafter

-18-

required to pay tax assessments, penalties, and interests to the IRS and related attorneys' fees and costs.

### E.       The Negligent Misrepresentation Claim

(1)

In order to bring a successful claim for negligent misrepresentation under Louisiana law, the plaintiff must prove (i) a legal duty to supply the correct information, (ii) a breach of that duty, (iii) which caused damage to the plaintiff.  *Cypress Oilfield Contractors v. McGoldrick Oil Co., Inc.*, 525 So.2d 1157 (La.App. 3 Cir.), *writ denied*, 530 So.2d 570 (La. 1988); *Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007, 1013-14 (La. 1993).

(2)

As regards a negligent misrepresentation claim brought by a non-party to the communication, the obligation giving rise to liability "is imposed by law based upon policy considerations due to the tortfeasor's knowledge of the prospective use of the information which expands the bounds of duty of reasonable care to encompass the intended user."  *Barrie*, 625 So.2d at 1016.  Whether there is a duty to disclose information is a question of law, and such duty does not exist absent some confidential, fiduciary or other special relationship which justifies imposition of such duty.  *Wilson v. Mobile Oil Corp.*, 940 F.Supp. 944, 955 (E.D. La. 1996).

(3)

Bradley is liable to the Plaintiffs' for negligent misrepresentation.  He owed the Plaintiffs the duties of care, loyalty and honesty and a duty to comply with the applicable standards of care and honor that duty.  Pls.' Request for Admission No. 27.  He knew that the

Plaintiffs, as well as other high-net worth individuals and business entities, would rely on the Defendants' opinions regarding legality of the tax strategies when determining whether the strategies were legal and sound investment opportunities.  Bradley breached his legal duty to supply correct information to the Plaintiffs when he assisted the other Defendants in marketing, promoting and giving opinions to the Plaintiffs on the tax strategies knowing that such tax strategies were improper and illegal and part of a scheme to make money.  Pls.' Request for Admissions No. 6-8 , 17 & 24.  He further breached his duty when he misrepresented the amount of work he did and the fees he was owed.  Bradley billed Jenkens & Gilchrist $112,500.00 for work allegedly related to the Plaintiffs,  yet he did no work and the bills were dictated to him by other Defendants.  Pls.' Request for Admission No. 10-12**.**

The Plaintiffs would not have participated in the tax strategies at issue and would not have given any money to the Defendants if they had known that the tax strategies were improper and illegal.  The Plaintiffs would not have sustained damages for tax assessments, penalties and interests and related legal fees and costs if they had not entered into these transactions.

### F.      The Civil Conspiracy Claim

(1)

Under Louisiana law, "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."  La. Civ. Code art. 2324(A). "It has been stated that if a conspiracy is conceived and executed and an injury results, the injured person has a cause of action against all of the conspirators, who may be held civilly liable for damage to a third party resulting therefrom."

*Butz v. Lynch*, 97-2166 (La.App. 1 Cir. 4/8/98), 710 So.2d 1171, 1174.  "The actionable element in a claim for civil conspiracy is not the conspiracy itself, but rather the underlying tort that the conspirators agree to perpetuate and actually commit*." Johnson v. CHL Enterprises, et al.*, 115 F.Supp.2d 723, 731 (W.D. La. 2000).  "In order to recover under this theory of liability, a plaintiff must prove that an agreement existed to commit an illegal or tortious act which resulted in the plaintiff's injury."  *Butz*, 710 So.2d at 1174 (citing *Silver v. Nelson*, 610 F.Supp. 505, 516-17 (E.D. La. 1985)); *see also Dufrene v. Farrell*, 03-1392 (La.App. 5 Cir. 4/27/04); 873 So.2d 800, 803.

(2)

Bradley is liable to the Plaintiffs for civil conspiracy.  Bradley was solicited by John Ohle and colluded with other Defendants named in the lawsuit in order to generate exorbitant fees by inducing high net-worth and business entities, such as the Plaintiffs, to engage in tax strategies they knew or should have known were improper and illegal.  Pls.' Request for Admission No. 6,7 & 18.   The Defendants' conspiracy to defraud the Plaintiffs regarding the tax strategies caused the Plaintiffs to sustain injuries in the form of tax assessments, fees and penalties and related attorneys' fees and costs.

### G.     Declaratory Judgment and Unjust Enrichment Claim

(1)

In order for a plaintiff to successfully bring an unjust enrichment claim, the plaintiff must prove the existence of five elements:

> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and finally (5) the action will only be allowed when there is no

other remedy at law, i.e. the action is subsidiary or corrective in nature.

*Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 407 (5th

Cir. 2004) (citing *Minyard v. Curtis Products, Inc.*, 205 So.2d 422, 432 (La. 1968) and La. Civ.

Code art. 2055 ("Equity, as intended in the preceding articles, is based on the principles that no

one is allowed to take unfair advantage of another and that no one is allowed to enrich himself

unjustly at the expense of another.")).

(2)

In the present case, Bradley was enriched as he received $255,000.00.  The Plaintiffs were

impoverished by the fact that they paid the Defendants approximately $1,033,500.00 in order to

participate in tax strategies deemed improper and illegal by the IRS and they claim to have

sustained significant losses in the form of tax assessments, penalties, and interest and related

attorneys' fees and costs.  There was no justification or cause for the enrichment and

impoverishment as Bradley admitted the amount of fees he billed Jenkens & Gilchrist was

dictated to him; the amount of fees he billed did not reflect the amount of hours he spent on the

matter and did not reflect his usual billing rate; he has no file containing any information

regarding Ducote Jax Holdings, LLC, Wayne C. Ducote, David L. Ducote, and/or Suzette A.

Ducote and he never spoke to any representative of these parties; he was not an independent third

party to the transactions at issue who was brought in to review and advise as to the legitimacy of

the tax strategies at issue; and he did not know the nature of the tax strategies at issue.  Pls.'

Request for Admission No. 9-15, 18 & 20-22.

However, because the Plaintiffs have adequate remedies at law available in the form of

their RICO, breach of fiduciary, negligent misrepresentation, fraud and civil conspiracy claims,

-22-

the Plaintiffs are not entitled to damages for unjust enrichment.

### H.   Damages

The Plaintiff sustained the following types and amounts of damages:

| | |
|---|---|
| Tax Assessment | $ 3,146,300.00 |
| Tax Penalty | $    314,630.00 |
| Tax Interest | $    499,770.00 |
| Fees of Tax Attorney, Accountant & Advisors to Participate in Tax Strategy | $ 1,033,500.00 |
| Fees to Resolve Tax Dispute | $    648,181.50 |
| Taxes on Settlement with Other Defendants | $ 1,111,500.00 |

The Court now addresses which of these damages were caused by Bradley's violations of RICO and by his breach of fiduciary duty; negligent misrepresentation; fraud; and civil conspiracy.

(1)

***Damages for RICO Violations***

18 U.S.C. § 1964(c) provides that

[a]ny person injured in his business or property by reason of a violation of section 1962...shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

The RICO Plaintiff "can only recover to the extent that he has been injured in his business or property by the conduct constituting the [RICO] violation." *Sedima v. Imrex*, 473 U.S 479 (1985) (quoting *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 398 (7th Cir. 1984), *aff'd*, 473 U.S. 606 (1985)).

As stated *supra*, Bradley's violation of subsection (a) caused the Plaintiffs to sustain

losses in the amount of $230,000.00.

Bradley's violations of subsections (c) & (d) of Section 1962 were the proximate cause of the Plaintiffs' sustained damages of tax assessments, fees and interest and the loss of the money paid to tax attorneys, accountants and advisors to participate in the tax strategies. This amount is $4,994,200.00. The Plaintiffs state that Bradley's violations caused them to pay $648,181.50 to resolve the tax dispute. Bradley is not liable to the extent this sum includes the Plaintiffs' attorneys' fees to reach settlement with the other Defendants because this damage is not a foreseeable injury from Bradley's violations. The Court cannot discern how much of the $648,150.50 was spent towards settlement with other Defendants because the Plaintiffs have not broken down this sum further. Consequently, the Court will not include the $648,150.50 in the damages calculation. Likewise, the tax the Plaintiffs had to pay on their settlement award from the other Defendants, $1,111,500.00, should not be included in recoverable damages, as this amount is also not a foreseeable injury from Bradley's RICO violations. The $2,850,00.00 that the Plaintiffs received in exchange for settling their claims against all other Defendants in a Settlement Agreement must also be deducted. Computing these damages amounts to a total of $2,144,200.00. Thus, Bradley is liable to the Plaintiffs for $2,144,200.00 for his violations of subsections (c) and (d).

Pursuant to § 1964(c), the Plaintiffs are entitled to threefold damages, the costs of bringing this suit, and reasonable attorneys' fees for Bradley's violations of § 1962's subsections. Accordingly, Bradley is liable to the Plaintiffs for $690,000.00 ($230,000.00 multiplied by 3), plus costs and reasonable attorneys' fees under subsection (a), and he is liable for $6,432,600.00 ($2,144,200.00 multiplied by 3), plus costs and reasonable attorneys' fees under subsections (c)

-24-

and (d).

The amount of reasonable attorneys' fees and costs will be heard by the Court on the parties' briefs. The Plaintiffs shall submit briefing on the issue by July 23, 2007, and Bradley shall submit a response by August 10, 2007. The Court will take the matter under submission on August 15, 2007.

(2)

**Damages for Breach of Fiduciary Duty; Negligent Misrepresentation; Fraud; and Civil Conspiracy**

Bradley is liable to the Plaintiffs for breach of fiduciary, negligent misrepresentation, fraud and civil conspiracy in the amount of $2,144,200.00. (*See* III. H(1) for information on how this figure was calculated).

## IV.  CONCLUSION

Accordingly, the Defendant William E. Bradley is liable to the Plaintiffs for violations of the civil RICO statute, specifically, 18 U.S.C. § 1962 (a), (c) & (d); breach of fiduciary duty; negligent misrepresentation; fraud; and civil conspiracy. The Plaintiffs are entitled to $690,000.00, plus costs and reasonable attorneys' fees for Bradley's violation of 18 U.S.C. §1962(a); $6,432,600.00, plus costs and reasonable attorneys' fees for Bradley's violation of 18 U.S.C. § 1962 (c) and (d); *or* $2,144,200.00 for Bradley's breach of fiduciary duty, negligent misrepresentation, fraud and civil conspiracy.

The Court presents these awards as alternative awards because the case involves multiple theories of liability and the Plaintiffs may not recover an amount of compensatory damages under state law and again under federal law. *See Alcorn County v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1171 (5th Cir. 1984) (stating that "duplicative damages [under RICO and state

common law] should not be allowed"); *Heller Financial, Inc. v. Grammco Computer Sales, Inc.*, 71 F.3d 518, 522-23 (5th Cir. 1996).  In total, the Plaintiffs' non-duplicative award amounts to $2,144,200.00.  However, as mentioned above, Plaintiffs are permitted treble damages plus reasonable attorneys' fees and costs for a violation of 18 U.S.C. § 1962.  Thus, the total amount recoverable by the Plaintiffs is $6,432,000.00, plus reasonable attorneys' fee and costs, which the Court will determine according to the above briefing schedule.  Plaintiffs may not recover more than this amount.

New Orleans, Louisiana, this __5th__ day of July, 2007.

UNITED STATES DISTRICT JUDGE